UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

INJAH TAFARI,

            Petitioner,

    -vs-

DAVID A. ROCK, Superintendent,

            Respondent.

**No. 10-CV-0729(MAT)
DECISION AND ORDER**

---

## I. Background

Injah Tafari ("Tafari"), an inmate at Upstate Correctional Facility, filed a pleading in the Northern District of New York captioned "Petition for a Writ of Habeas Corpus", seeking to "reverse and expunge determinations from four (4) Tier II disciplinary hearings, and one (1) Tier III Superintendent's hearing held at Five Points Correctional Facility on (a) 2/22/07; (b) 4/11/07; (c) 4/19/07; (d) 6/28/07; and (e) 8/29/07, that the New York State Court of Appeals affirmed on September 3rd, 2009[1] from an Order of the Appellate Division, Third Department." The petition was transferred to this Court on September 9, 2010. On January 5, 2012, the Court (Skretny, D.J.) issued an order denying

---

[1] Tafari failed to provide any citations to the relevant state court appellate decisions affirming the outcomes of the disciplinary proceedings that he challenges, and the Court was unable to locate a copy of this alleged order in its search of Westlaw. It is impossible to determine which of the many dozens of decisions reported on Westlaw in Tafari's lawsuits pertain to the five disciplinary hearings mentioned above, as the appellate courts generally do not reference the dates of the hearings in their orders.

Tafari's application to proceed in forma pauperis and directing him to show cause why the petition should not be re-characterized as a civil action under 42 U.S.C. § 1983. See Dkt. #8. Tafari filed a response, stating in conclusory terms that his pleading in fact was properly characterized as a habeas petition, and again seeking leave to proceed as a poor person. See Dkt. #9.

**II. Recharacterization of the Petition**

When a litigant makes a constitutional challenge to a determination which affects the overall length of his confinement, the "sole federal remedy is a writ of habeas corpus." Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). Where a prisoner seeks to challenge the constitutionality of a disciplinary proceeding resulting only in the imposition of sanctions that do not affect the overall length of his confinement, such a challenge is properly brought under 42 U.S.C. § 1983. Id. at 499 (§ 1983 action "is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody"); see also, e.g., Jenkins v. Haubert, 179 F.3d 19, 24 (2d Cir. 1999).

With one exception, all of the sanctions that Tafari seeks to have expunged would be proper subjects of a complaint filed pursuant to 42 U.S.C. § 1983. With regard to the last of the challenged disciplinary determinations, Tafari alleges that among the sanctions he received was a four-month recommended loss of good

time credits, which can be a proper subject of a petition for habeas corpus under 28 U.S.C. § 2254. Edwards v. Balisok, 520 U.S. 641, 646 (1997). However, as the Court (Skretny, D.J.) previously found, the loss of four months of good time will not affect the length of Tafari's confinement because he is serving a sentence with a maximum life-term. Prisoners serving such sentences are not eligible to receive good-time credits. See N.Y. Corr. Law § 803(1)(a) ("Every [inmate] . . . except a person serving a sentence with a maximum term of life imprisonment, may receive time allowance against the term or maximum term of his . . . sentence imposed by the court."). Therefore, inasmuch as Tafair is serving a maximum life-term, the deprivation of any good time credits he sustained as the result of the July 2007 disciplinary hearing does not affect the length of his confinement because he is not eligible for a good-time reduction of his sentence. See, e.g., Bressette v. Travis, 240 A.D.2d 828, 828 (3d Dept. 1997). The Court accordingly dismissed as frivolous Tafari's challenge to the component of his disciplinary sentence involving a loss of good time credits. Dkt. #8 at 5. Thus, the only remaining sanctions challenged by Tafari pertain solely to the conditions of his confinement (i.e., loss of headphones privileges, keeplock, SHU).

Tafari, in his response to the Court's order to show cause why his petition should not be recharacterized as a § 1983 complaint, states, without elaboration or explanation, that he "is challenging

the validity, and/or length of his confinement, and 'not' the conditions of his confinement." Dkt. #9 at 2. This conclusory assertion is plainly insufficient to establish that his pleading is actually a petition for a writ of habeas corpus. Accordingly, Tafari's petition is recharacterized as an action arising under 42 U.S.C. § 1983.

### III. **In Forma Pauperis Application**

As amended by the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915 allows indigent prisoners to enter into a structured payment plan with regard to the filing fees. See 28 U.S.C. § 1915(b). Section 1915(g) denies this option to "frequent filers", like Tafari, who have repeatedly instituted lawsuits that have been dismissed as frivolous, malicious, or lacking an arguable basis in law or fact. See 28 U.S.C. § 1915(g). Tafari has had at least four federal actions or appeals dismissed for these reasons prior to instituting the present case. See Tafari v. Aidala, No. 1:00-CV-405 (W.D.N.Y. Sept. 28, 2001) (dismissing complaint with prejudice for failure to state claim, and certifying that any appeal would not be taken in good faith); Tafari v. Aidala, No. 01-0279 (2d Cir. Apr. 5, 2002) (dismissing appeal from Tafari v. Aidala, 1:00-CV-0405 (W.D.N.Y. Sept. 28, 2001, as frivolous); Tafari v. France, No. 06-1876 (2d Cir. Nov. 2, 2006) (dismissing appeal from Tafari v. France, 1:01-CV-0011 (W.D.N.Y. Mar. 10, 2006, as frivolous); Tafari v. Stein, 09-0710-pr(L), 09-2288-pr (Con.)

(2d Cir. Nov. 13, 2009) (dismissing appeal from Tafari v. Stein, 1:01-CV-0841 (W.D.N.Y. Feb. 12, 2009), as lacking an arguable basis in law or fact).

Pursuant to 28 U.S.C. § 1915(g), Tafari's application for in forma pauperis status must be denied unless he can demonstrate that he is in "imminent danger". Tafari has not made such an allegation, and indeed his pleadings contain no suggestion that this is the case. The Court finds that Tafari, An experienced pro se litigator who is well aware of the "three strikes" rule, brought this proceeding as a 28 U.S.C. § 2254 petition in an attempt to make an "end run" around the rule and obtain poor person status. His application to proceed in forma pauperis is therefore denied.

**IV. Dismissal Pursuant to Fed. R. Civ. P 8(a)**

Federal Rule of Civil Procedure 8 ("Rule 8") requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). "The key to Rule 8(a)'s requirements is whether adequate notice is given." Wynder v. McMahon, 360 F.3d 73, 79 (2d Cir. 2004) (citation omitted). Notice is satisfactory when it "enable[s] [the adverse party] to answer and prepare for trial." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988); accord, e.g., Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995) (stating that adequate notice is "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so

that it may be assigned the proper form of trial"). To satisfy Rule 8, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). As the Supreme Court has explained, a "complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (internal quotations omitted; second alteration in original). To determine whether a claim is "plausible," a court must "draw on its judicial experience and common sense." Id. at 679.

Although courts must give pro se pleadings a liberal construction, "the basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike." Wynder, 360 F.3d at 79, n. 11 (citation omitted). Thus, if a pro se complaint does not comply with the requirements of Rule 8, a court may dismiss the complaint "on its own initiative or in response to a motion by the defendant." Salahuddin, 861 F.2d at 42. Dismissal for non-compliance Rule 8 is appropriate when the complaint is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citation omitted); see also Iwachiw v. New York State Dep't of Motor Vehicles, 396 F.3d 525, 527–28 (2d Cir. 2005) (affirming dismissal of a pro se complaint because unintelligible).

When the district court elects to dismiss the complaint, "it normally grants leave to file an amended pleading that conforms to the requirements of Rule 8." Salahuddin, 861 F.2d at 42 (citations omitted). The Second Circuit has observed that "[t]he district court has discretion whether or not to grant leave to amend, and its decision is not subject to review on appeal except for abuse of discretion. . . ." Id. (quotation omitted; footnote omitted in Salahuddin). In exercising this discretion, the district court should bear in mind that under Rule 15(a), leave to amend "'shall be freely given when justice so requires.'" Id. (quoting Fed. R. Civ. P. 15(a); citations omitted). Nevertheless, the Second Circuit has recognized, the district court has the authority to "dismiss a prolix complaint without leave to amend in extraordinary circumstances, such as where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible, or where the substance of the claim pleaded is frivolous on its face." Salahudin, 861 F.2d at 42 (internal and other citations omitted).

Tafari is an longstanding and prolific litigant, having filed dozens of lawsuits in both state and federal court. Notwithstanding his experience with the rules of pleading, he has failed to set forth any plausible claims in his complaint, which is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin, 861 F.2d at 42.

The present case is thus one where dismissal without granting leave to amend is appropriate.

**V.     Analysis of the Complaint**

In his complaint, Tafari discusses five different disciplinary incidents, although his accompanying memorandum of law only appears to address two of those incidents–namely, the two in which he claims he was denied the right to call witnesses and to obtain evidence (i.e., a videotape of an unspecified subject). As discussed below, none of Tafari's allegations sets forth a colorable constitutional claim on which relief may be granted.

   **A.     The February 2, 2007 Report of Harassment**

Tafari states that on February 2, 2007, Corrections Officer ("CO") Canfield filed a report against him for harassment, and the penalty imposed as a result was 30 days keeplock, loss of commissary and phone privileges, and 60 days confinement in the Special Housing Unit ("SHU"). Tafari states that the hearing process resulted in violations of "9 N.Y.C.R.R. § 7695(vi)(B)" which he claims provides that an inmate "shall not receive a misbehavior report based solely upon an alleged false statement made by the grievant".

In New York's code of administrative regulations ("N.Y. Comp. Code R. & Regs." or "N.Y.C.R.R."), there is no such section as the one quoted by Tafari. The most similarly numbered section is 9 N.Y.C.R.R. § 7695, which requires nondiscrimninatory treatment in

relation to the regulation and management of state correctional facilities. It is entirely irrelevant to Tafari's situation.

Next, Tafari states that "7 N.Y.C.R.R. § 251-3.1(a)(b)(c)" was violated because the misbehavior report was not issued in a timely manner. Complaint ("Compl."), ¶3 (Dkt. #7). Although this is an actual section, Tafari has not established that it was violated. N.Y.C.R.R. § 251-3.1(a) requires that incidents of inmate misbehavior must be in writing. N.Y.C.R.R. § 251-3.1(b) specifies who must make the report. N.Y.C.R.R. § 251-3.1(c) states what the report must contain. None of the sections specifies a time-period within which the report must be filed. Moreover, even if Tafari had demonstrated non-compliance with one of these sections, he has not established a deprivation of rights guaranteed to him under the federal constitution. See Kern v. City of Rochester, 93 F.3d 38, 43 (2d Cir. 1996) (To state a cognizable claim under 42 U.S.C. § 1983, "a plaintiff must allege a violation of rights secured by the Constitution or laws of the United States, and that such violation was committed by a person acting under color of state law."), cert. denied, 520 U.S. 1155 (1997).

**B.   The April 6, 2010 Report of Harassment**

Tafari alleges that Nurse Tremlett filed a report against him on April 6, 2010, for harassment, and that the penalty imposed was 30 days loss of headphones. Compl., ¶5 (Dkt. #7). Tafari states that on appeal he argued that "the charge did not substantiate the

statement made by petitioner." Id., ¶6. However, he provides no elaboration on what this statement means, or how his constitutional rights allegedly were violated.

"A complaint is frivolous when it is vague and incomprehensible or when it is supported by baseless factual allegations describing fantastic or delusional scenarios." Bloom v. Unites States Gov't, No. 02 Civ. 2352, 2003 WL 22327163, at *8 (S.D.N.Y. Oct. 10, 2003). The allegations in support of this claim by Tafari are incomprehensible and so vague as to make it impossible for the defendant to frame a response. The claim involving Nurse Tremlett accordingly cannot provide a basis for relief, and it is dismissed. See Biviano v. Richard, No. 11-cv-1674, 2011 WL 1579925, at *4 (E.D.N.Y. Apr. 26, 2011) ("The vague, disjointed, and incomprehensible nature of the instant complaint . . . supports this Court's decision to dismiss with prejudice."); Middleton v. United States, No. CV 10-6057(JFB)(ETB), 2011 WL 7164452, at *3 (E.D.N.Y. June 28, 2011)(similar).

**C.  The April 16, 2007 Report for Misbehavior**

The third incident described in Tafari's complaint is that on April 16, 2007, CO Murphy filed a misbehavior report against him for something he describes as "unauthorized exchange and other inmate's criminal information". A penalty of 30-days loss of headphones was imposed. Compl., ¶7 (Dkt. #7). On appeal, Tafari argued that he was "denied the right of a witness ("video tape")

pursuant to 7 N.Y.C.R.R. § 253.5(a)(b)(c)". Id., ¶8. Tafari has provided no other information regarding this claim, such as whether he was subjected to a Tier I, II, or III disciplinary hearing, or the potential punishment he faced. Loss of headphone privileges clearly is not an atypical and significant hardship on a prison inmate's life sufficient to create a protectible due process liberty interest. See, e.g., Husbands v. McClellan, 990 F. Supp.2d 214, 217 (W.D.N.Y. 1998) (holding that temporary loss of various privileges (telephone, package, commissary, and recreation privileges) did "not represent the type of deprivation which could reasonably be viewed as imposing an atypical and significant hardship on an inmate") (citing, inter alia, Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996)).

However, the Supreme Court's precedents in this area counsel that "the determination of whether a liberty interest has been sufficiently alleged should focus upon the potential penalties that an inmate faces at a disciplinary hearing, rather than on the ultimate penalty imposed, to determine the necessary due process protection." Rivera v. Coughlin, No. 92 Civ. 3404 (DLC), 1996 WL 22342, at *6, n.6 (S.D.N.Y. Jan. 22, 1996) (citing Superintendent, Mass. Corr. Inst. at Walpole v. Hill, 472 U.S. 445, 454 (1985) (stating that "[w]here a prison disciplinary hearing may result in the loss of good time credits," an inmate " must receive" the procedural protections outlined in Wolff v. McDonnell, 418 U.S.

i.e.,); <u>Wolff</u>, 418 U.S. at 563-64 (requiring Nebraska prison officials to give inmates notice of pending charges prior to a hearing that would determine whether good time credits would be revoked). Thus, Tafari's complaint lacks a sufficient basis for determining whether he had a cognizable due process liberty interest at stake, such as the loss of good time credits.[2] Even assuming that Tafari had a due process liberty interest, and that he was denied "the right of a witness ('video tape')", he does not have a meritorious claim.

The Second Circuit has held that prison disciplinary hearings are subject to a harmless error analysis. <u>See</u> <u>Powell v. Coughlin</u>, 953 F.2d 744, 750 (2d Cir. 1991) ("If a person may be convicted and obliged to serve a substantial prison sentence notwithstanding a constitutional error determined to be harmless, surely the conditions of confinement of a sentenced prisoner may be made temporarily more severe as discipline for a prison rules infraction despite a harmless error in adjudicating the violation.") (internal citations omitted). "Courts may find harmless error where a prisoner fails to show that the error negatively affected the

---

[2] Given that the punishment was a mere loss of headphones privileges, the Court suspects that Tafari was not subjected to a Tier III or Superintendent's Hearing, which can result in both a loss of good time credits and a virtually unlimited solitary confinement sentence. See N.Y. Comp. Codes R. & Regs., tit. 7 § 254.7(a) (iii) and (vi). A Tier II or Disciplinary Hearing can result in no more than 30 days confinement in SHU and may not impose a loss of good time credits. A Tier I or Violation Hearing, which is reserved for the least serious infractions, can only be punished by loss of privileges-such as the loss of headphones privileges here. <u>See</u> 7 N.Y.C.R.R. §§ 252, 253, 254 & 270.3(a)(1)-(3).

outcome of the proceeding, or that it impaired the prisoner's ability to prepare a defense." Marino v. Humphrey, No. 05 Civ. 6571(SAS) 2006 WL 2786182, at *5 & & n. 94 (S.D.N.Y. Sept. 27, 2006) (citing Grossman v. Bruce, 477 F.3d 801, 805 (10th Cir. 2006) ("[A] prisoner cannot maintain a due process claim for failure to permit witness testimony if he fails to show that the testimony would have affected the outcome of his case.") (citation omitted); Louis v. Ricks, No. 01 Civ. 9368, 2002 WL 31051633, at *52-53 (S.D.N.Y Sept. 13, 2002); Zamakshari v. Dvoskin, 899 F. Supp. 1097, 1111 (S.D.N.Y. 1995)).

Tafari's pleadings contain no hint as to the contents of the videotape or how the tape would have been relevant and material to his defense against the disciplinary charges. Having failed to show how, if at all, the hearing result would have been different had he been given access to those documents, he has failed to establish how he was prejudiced by the alleged denial of the videotape. See, e.g., Clark v. Dannheim, 590 F. Supp.2d 426, 429-31 (W.D.N.Y. 2008) (dismissing state prisoner's due process claim based on hearing officer's denial of requests to review certain medical records, and to call a prison sergeant as a witness, where plaintiff failed to demonstrate that he was prejudiced by those refusals); Eleby v. Selsky, 682 F. Supp.2d 289, 292 (W.D.N.Y. 2010) (similar).

**D.   The June 25, 2007 Report for Creating a Disturbance**

The fourth incident described in Tafari's complaint refers to a misbehavior report filed on June 25, 2007, by Nurse Bannister against Tafari for "creating disturbance and interference." Compl., ¶9 (Dkt. #7). The penalty imposed was a 15-day loss of headphones. Id. Tafari argued on appeal that he was "denied inmate witnesses". Id., ¶10.

Tafari has provided no information regarding the substance of the purported testimony of the unidentified inmate witnesses, and thus he cannot demonstrate how he was prejudiced by the alleged denial of their testimony at his hearing. See, e.g., Eleby v. Selsky, 682 F. Supp.2d at 292 ("Plaintiff further contends that his rights were violated because he was denied certain documents that he had requested concerning the testing device. Again, plaintiff has failed to show that he was prejudiced by the denial of those documents, in other words, that the hearing result would have been different had he been given access to those documents.").

**E.   The July 24, 2007 Report for Harassment, Refusing a Direct Order and Making Threats**

The fifth and final incident set forth in Tafari's complaint concerns a July 24, 2007 misbehavior report filed by CO Canfield against Tafari for harassment, refusing a direct order, and making threats. The penalty imposed was four months confinement in SHU, with loss of commissary, package, and phone privileges; and four

months recommended loss of good time. See Compl., ¶¶11, 12 (Dkt. #7).

Again, Tafari provides no useful information concerning his claim. He asserts in a conclusory fashion that CO Canfield "filed the report in retaliation to grievances Petitioner filed against her," and complains that "the video tape proved [his] innocents [sic]", that he was "denied right to call employee witnesses ("Sgt. Ingles and CO. Canfield")", and that "the hearing was untimely as the third extension was requested and granted after the extention [sic] had expired." Compl., ¶12 (Dkt. #7).

As an initial matter, the conclusory allegation that a misbehavior report was filed in retaliation to previous grievances he filed is entirely insufficient to state a claim upon which relief may be granted.

In addition, Tafari has not demonstrated a meritorious constitutional claim insofar as he alleges that he was denied the right to call employee witnesses since he has failed to show how he was prejudiced, if at all, by the alleged lack of their testimony. Indeed, it appears that he does not know whether they would have provided helpful or even relevant testimony. See Petitioner's Memorandum of Law attached to Petition o(Dkt. #7) at 2 ("Inasmuch as the video tape witnesses, employee witnesses, as well as inmate witnesses, they all *may have provided* testimony that was material, the their absence substantially prejudiced petitioner's ability to

present his defense . . . .") (emphasis supplied). A prisoner cannot demonstrate prejudice and thus non-harmless error based upon pure speculation. See, e.g., United States v. Harrington, 354 F.3d 178, 184 (2d Cir. 2004) ("[W]hether an error was in fact harmless because it did not prejudice the defendant must be resolved on the basis of the record, not on the basis of speculative assumptions . . . ."); Lou v. Mantello, No. 98-CV-5542 (JG), 2001 WL 1152817, at *10 (E.D.N.Y. Sept. 25, 2001) ("Habeas claims based on complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified [to] are largely speculative.") (interior quotation and citation omitted).

**VI. Conclusion**

For the foregoing reasons, the complaint (Dkt. #7) is dismissed in its entirety with prejudice for failure to state a claim. The Court hereby certifies that any appeal from this Decision and Order would not be taken in good faith. See 28 U.S.C. § 1915(a). The Clerk of the Court is directed to enter judgment dismissing the action.

**IT IS SO ORDERED.**

                                       **S/Michael A. Telesca**
                                       Honorable Michael A. Telesca
                                       United States District Judge

DATED: Rochester, New York
       April 18, 2012